# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROY MONTALVAN, et al.

    Plaintiffs

v.

NEVILLE'S MOBILE HOME COURT, LLC

    Defendant

3:11-CV-850
(JUDGE MARIANI)

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

On May 4, 2011, Plaintiffs, Roy Montalvan and Louise Montalvan, initiated the above-captioned action by filing a Complaint against William Neville and Marlene Neville t/d/b/a Neville's Mobile Home Park, alleging Violations of Clean Water Act (Count I), Violations of Clean Streams Law (Count II), Continuing Trespass (Count III), Continuing Private Nuisance (Count IV), and Negligence (Count V).

On April 24, 2012, a Consent Order and Agreement ("COA"), dated that same day and signed by Roy Montalvan, Louise Montalvan, William Neville, Marlene Neville, and counsel for Plaintiffs and Defendants, as well as the Honorable Richard Conaboy, presiding judge in the action,[1] was filed of record in this case. The COA was accompanied by a Court Order stating that the Court sanctioned the Agreement and directing that the action be

---

[1] On April 10, 2017, this action was reassigned to the undersigned.

"administratively closed without prejudice in the event either party does not comply with the terms of the settlement." (Doc. 24).

On March 2, 2017, Plaintiffs filed a motion to reopen the case. (Doc. 26). In November of 2017, Plaintiffs also filed a Motion for Substitution of Party Pursuant to Fed. R. Civ. P. 25(c), wherein Plaintiffs requested that the Court substitute Neville's Mobile Home Court, LLC, as a named party in the place of William Neville and Marlene Neville t/d/b/a Neville's Mobile Home Park. (Doc. 41).

On March 22, 2018, the Court held an evidentiary hearing and oral argument with respect to both of Plaintiffs' aforementioned motions. Following oral argument, the Court orally granted Plaintiffs' motion to reopen the case (*see also*, Doc. 57 (granting motion to reopen)). On March 27, 2018, the Court issued a memorandum opinion granting Plaintiff's Motion for Substitution of Party and ordered the substitution of Neville's Mobile Home Court, LLC, as the Defendant in this action in the place of William Neville and Marlene Neville t/d/b/a Neville's Mobile Home Park. (Docs. 58, 59).

Plaintiffs subsequently filed a Motion for Contempt (Doc. 60) requesting that the Court order the enforcement of the April 24, 2012 Consent Order. Upon the request of the parties (Doc. 62), the Court entered a scheduling order allowing Defendant to file a response to Plaintiffs' Motion, limited only to its procedural defenses; and following this Court's disposition of Defendant's procedural defenses, allowing the parties a 45-day discovery period, after which Plaintiff would file an Amended Motion for Contempt. (*See* Doc. 63).

## II. ANALYSIS

In their Motion for Contempt, Plaintiffs set forth a number of factual allegations, accompanied by 19 exhibits, in support of their assertion that Defendant has violated the COA and requesting that the Court order the enforcement of the April 24, 2012 Consent Order. In response, Defendant's current brief in opposition raises four procedural defenses to Plaintiffs' claim that the defendant did not comply with the terms of the COA, asserting that the action is barred by accord and satisfaction, the statute of limitations, and the doctrine of laches, and that the plaintiffs lack standing to pursue this action. (Doc. 65).

### A. Statute of Limitations

Defendant argues that Plaintiffs' action is barred by the applicable statute of limitations because the Consent Agreement, which Defendant equates to a "consent decree", is subject to the four-year statute of limitations applicable to contracts under Pennsylvania law. (Doc. 65, at 5; see also, id. at 3).[2]

Here, the parties agree that the COA is a contract. (See Doc. 65, at 5; Doc. 67, at 3). However, Plaintiffs argue that "the COA is a consent decree of the court, making it both contract and court order" and that "[w]hile a consent decree is treated as a contract for purposes of interpretation, the enforcement of a consent decree is an equitable remedy and, therefore, is only subject to equitable defenses." (Doc. 67, at 3-4).

---

[2] Defendant's brief addressing the statute of limitations begins, and ends abruptly, on page 5. However, a review of Defendant's brief suggests that page 3 of this document, which is contained within the section addressing the doctrine of accord and satisfaction, is actually the remainder of Defendant's argument with respect to its statute of limitations defense.

3

"A consent decree is a hybrid of a contract and a court order. A decree embodies the agreement of the parties and as such is in some respects contractual in nature; however, a decree is also in the form of a judicial order that the parties expect will be subject to the rules generally applicable to other judgments and orders." *Holland v. N.J. Dep't of Corr.*, 246 F.3d 267, 277 (3d Cir. 2001). A district court possesses the inherent power to enforce compliance with its consent decrees. *Id.* at 281-282. Thus, until parties to a consent decree "'have fulfilled their express obligations, the court has continuing authority and discretion – pursuant to its independent, juridical interests – to ensure compliance.'" *Id.* at 283 (quoting *United States v. Local 359, United Seafood Workers*, 55 F.3d 64, 69 (2d Cir. 1995)). For these reasons, although interpretation of a consent decree is governed by principles of contract law, the enforcement of this decree or agreement is subject to the Court's inherent power under principles of equity. *See Cook v. City of Chicago*, 192 F.3d 693, 695 (7th Cir. 1999) ("From the standpoint of interpretation a consent decree is a contract, but from the standpoint of remedy it is an equitable decree. And so if it is violated the injured party must ask the court for an equitable remedy. The remedy might be a contempt judgment, . . . but more commonly . . . it is a supplementary order (preferred as less condemnatory than a judgment of contempt . . .). Even if compensatory in purpose and effect, it is, we emphasize, an *equitable* order, and therefore subject to the usual equitable defenses.") (collecting cases) (internal citations omitted); *Brennan v. Nassau Cty.*, 352 F.3d 60, 63 (2d Cir. 2003) (finding that the district court "should have applied the equitable

doctrine of laches to [Plaintiff's] claims because consent decrees are subject to equitable defenses and not legal defenses such as the statute of limitations."); *Bergmann v. Michigan State Transp. Comm'n*, 665 F.3d 681 (6th Cir. 2011).

For the foregoing reasons, the four-year statute of limitations applicable to contract actions does not bar Plaintiff from seeking to enforce the consent decree and obtain a contempt judgment for Defendant's alleged failure to comply with the terms of that decree.

### B. Accord and Satisfaction

Although Defendant asserts that Plaintiffs' action is also barred by accord and satisfaction, the basis for this argument is unclear. Defendant's argument with respect to the doctrine of accord and satisfaction fails to set forth any legal authority on this issue, including the standard for establishing this defense.

"The elements of an accord and satisfaction are (1) a disputed debt, (2) a clear and unequivocal offer of payment in full satisfaction of the debt, and (3) acceptance and retention of payment by the offeree." *T.J. Trauner Assoc., Inc. v. Cooper-Benton, Inc.*, 820 F.2d 643, 645 (3d Cir. 1987). Defendant argues that "the original Defendants had one hundred and twenty (120) days to complete the project . . . and the parties agreed to dismiss the case ninety (90) days after that" and that as a result "defendants poured over $130,000.00 into constructing a septic system and water treatment system which was approved by the Township's Sewer Enforcement Officer" (Doc. 65, at 2). However, this brief and unsupported argument is insufficient to support a claim that there has been accord

5

and satisfaction. Here, Plaintiffs' motion for contempt is premised in large part on an allegation that Defendant did not "complete the project" and thus failed to comply with the terms of the COA. (*See e.g.*, Doc. 67, at 2 ("Plaintiffs strenuously dispute whether a new system has been installed at the Defendant's Mobile Home Park, which is a factual issue for this Court to determine in its ruling on the Motion for Contempt. Additionally, the Consent Order and Agreement ('COA') requires not only that a new system be installed but also that the system properly functions and ceases the discharge of raw sewage into unnamed tributaries and onto Plaintiffs' property.")). In addition, the Court agrees that, at this stage in the proceedings, an issue of fact exists as to Defendant's compliance with the terms of the COA, and the Court is thus unable to determine whether there has, in fact, been accord and satisfaction.

Finally, due to Defendant's failure to set forth the applicable law with respect to the doctrine of accord and satisfaction, or to explain how this doctrine may bar Plaintiff's claim or action, the Court is unable to make any further determination as to the basis for Defendant's assertion that the action is barred by the doctrine of accord and satisfaction.

### C. Doctrine of Laches

Defendant next argues that this action is barred by the doctrine of laches. (Doc. 65, at 3-4).

The doctrine of laches is an equitable doctrine wherein "[i]t is hornbook law that laches consists of two essential elements: (1) inexcusable delay in instituting suit, and (2)

6

prejudice resulting to the defendant from such delay." *Univ. of Pittsburgh v. Champion Prod., Inc.*, 686 F.2d 1040, 1044 (3d Cir. 1982) (citing *Gruca v. United States Steel Corp.*, 495 F.2d 1252, 1258 (3d Cir. 1974); *Sobosle v. United States Steel Corp.*, 359 F.2d 7, 12-13 (3d Cir. 1976)).[3]

Although Defendant once again fails to cite any case law in support of its assertion that this action is barred by the equitable doctrine of laches, Defendant does assert that the "case has been closed now for nearly six years", the original defendants and their contractor, engineers, and experts are "long gone", and that there "was some sort of supplemental agreement between the parties which no one can explain but Plaintiffs were able to get five times more money." (Doc. 65, at 3). Defendant further argues that it is "severely prejudiced by the lapse of time Plaintiffs have taken in attempting to resurrect this case" and that "there has been no reason given for doing so, other than Plaintiff's false assertion that Defendants failed to replace the system" (Doc. 65, at 3).[4]

---

[3] Pennsylvania law and federal law with respect to the doctrine of laches "are identical for all practical purposes." *Univ. of Pittsburgh v. Champion Prod., Inc.*, 686 F.2d 1040, 1044 (3d Cir. 1982).

[4] Defendant also argues that it "had nothing to do with the original issues in the Complaint." (Doc. 65, at 3). Defendant makes similar assertions in other portions of its brief that it is prejudiced because the "original defendants" are deceased and thus unable to "shed light" on certain issues. (*See e.g., id.* at 5). Although the Court declines to address the factual merits of this assertion, the argument on its face is unavailing in light of this Court's prior findings, after an evidentiary hearing, that "any transfer of interest [between the Original Defendants and Nancy Haines, the owner of Neville's Mobile Home Court, LLC] was effected prior to the COA being signed by the parties on April 24, 2012, and prior to the Court's adoption of the COA" and that "there is no evidence that the trailer park business changed, in anything other than name and incorporation, when Neville's Mobile Home Park became Neville's Mobile Home Court, LLC." (Doc. 58, at 5, n.4).

7

Defendant's assertion of prejudice goes to the heart of Plaintiff's claim: whether Defendants failed to replace the system in accordance with the terms of the COA. Defendant's argument that Plaintiff's reason for "resurrect[ing] this case" is "false" is premature as it addresses the merits of Plaintiff's motion for contempt and must be determined following the close of discovery. In addition, Defendant's brief and generalized description of why it will suffer prejudice if this action is allowed to proceed does not demonstrate any concrete or persuasive attempt to establish prejudice. Rather, at best, Defendant has demonstrated the possible presence of delay, although a determination of whether this five-year delay is inexcusable must await the completion of discovery and the presence of a more developed record. This is particularly so in light of Plaintiffs' extensive list of purported reasons for not moving to enforce the COA at an earlier time. (Doc. 67, at 5-8).

### D. Standing

Defendant argues that Plaintiffs, "at the time of the filing" their pending motion, did not have standing to pursue this action. (Doc. 65, at 4). In support of this argument, Defendant relies on the undisputed fact that Plaintiffs have been in bankruptcy proceedings (see Doc. 65, at 4; Doc. 67, at 10) and claims that "Plaintiffs falsely failed to disclose the existence of this lawsuit in their Statement of Financial Affairs filed on April 4, 2017" (Doc. 65, at 4).

Again, Defendant has not set forth any legal argument in support of its assertion that the Plaintiffs lack standing in the present matter. As a result, the Court is unaware of

Defendant's basis for asserting that the alleged failure "to disclose the existence of this lawsuit" in some way impacts Plaintiffs' standing in this action or ability to pursue enforcement of the COA. Defendant's assertion that Plaintiffs failed to disclose the existence of the lawsuit during the bankruptcy proceedings, even if accepted as true, does not on its face appear to affect Plaintiffs' standing in this action. In the absence of any legal authority or substantive argument by Defendant, the Court declines to further consider this defense in the present opinion.

## III. CONCLUSION

For the aforementioned reasons, Defendant's procedural defenses set forth in its "Brief in Opposition to Plaintiffs' (Amended) Motion for Contempt" (Doc. 65) will be denied. While the defenses raised by Defendant may ultimately be valid, at this stage in the proceedings and without the benefit of a full factual record, such defenses are premature and unpersuasive. In accordance with the parties' agreement and this Court's Order (Docs. 62, 63), the parties shall begin a 45-day discovery period, after which Plaintiffs shall file an Amended Motion for Contempt. As a result, Plaintiffs' current Motion for Contempt (Doc. 60) will be denied without prejudice to Plaintiffs' re-filing of a Motion for Contempt within 30 days following the expiration of the discovery period. A separate Order follows.

Robert D. Mariani
United States District Judge